UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
MANHATTAN COURTHOUSE

| | |
|---|---|
| Scott Mao, individually and on behalf of all others similarly situated, | 1:22-cv-10847 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Diageo North America, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Diageo North America, Inc. ("Defendant") manufactures, labels, markets, and sells "Ranch Water" "Made With 100% Agave & Natural Lime Juice" under the Lone River brand ("Product").




2. The other relevant representations includes images of Texas, a "longhorn," the agave plant, the source crop for tequila, and two squiggly lines, an allusion to the "worm" people associate with tequila, "Original," "Hard Seltzer," "4 % Alc. Vol." ("ABV" or alcohol by volume) and "Roots In Far West Texas."

## I. ORIGINS OF RANCH WATER

3. Ranch water likely originated in the 1960s in the blazing sun on West Texas ranches where cowboys worked long days.

4. Legend has it they began their day with a thermos full of tequila and ice, and after lunch they would add lime, a staple of their Tex-Mex cuisine.

5. At some point, carbonated water, used as part of their ranching duties, was added to improve refreshment.

6. Ranch water's popularity has spread beyond Texas for numerous reasons.

7. First, according to the founder of one brand of ranch water, its lack of a sweetener dovetails with consumers' "shift[ing] away from sugary, high-calorie cocktails."

8. Second, its limited and simple ingredients are consistent with consumer avoidance of beverages with synthetic components in favor of what they can make at their backyard parties.

9. Third, ranch water is not highly processed through complicated machinery, but made by pouring tequila, lime juice and sparkling water over ice, a formula that works for canned, ready-to-drink ("RTD") versions.

10. This means RTD ranch waters will be similar to those born on the West Texas plains and made and served at authentic Texas icehouses, open-air dive bars where Texans go to cool off.

11. Fourth, according to a report by International Wine & Spirits Research ("IWSR"), "[B]ecause tequila is plant-based [from agave], many consumers perceive it to be better for them

[,] [] seen to be 'cleaner' and lighter [] with no added sugar and less adulteration."[1]

12. The result is that tequila is "the fastest-growing spirits category."

13. Fifth, ranch water fits into the trend of "better for you" alcoholic drinks which are based on alcohol but contain natural and simple ingredients.

14. Sixth, novel technologies and regulatory adjustments have resulted in a boom of "canned cocktails" or alcoholic beverages containing small but significant amounts of distilled spirits instead of having a base of malt liquor or beer based on sugar or barley.

15. Seventh, ranch water is considered an "upgrade to a hard seltzer," made with "vague ingredients such as malted liquor and natural flavors," as opposed to sparkling water, lime and tequila with no sweeteners.[2]

16. Eighth, its roots in the western rancher mythos appeal to a sense of adventure.

## II. PRODUCT LACKS TEQUILA AND ADDS SWEETENER

17. Though the Product contains carbonated water and lime, the labeling misleads consumers because it lacks tequila and adds a sweetener in the form of agave nectar, shown through the small print on the back of the can and case.

> INGREDIENTS: CARBONATED WATER, ALCOHOL FROM SUGAR, KEY LIME JUICE, NATURAL FLAVOR, CITRIC ACID, ORGANIC AGAVE NECTAR, SALT.

INGREDIENTS: CARBONATED WATER, ALCOHOL FROM SUGAR, KEY LIME JUICE, NATURAL FLAVOR, CITRIC ACID, ORGANIC AGAVE NECTAR, SALT.

---

[1] Editor, Is this the next big thing in RTDs?, Drinks Digest, Mar. 17, 2021.
[2] Jessica Mason, How Tequila and hard seltzer trends are boosting ranch waters' popularity, The Drinks Business, May 25, 2022.

18. First, "Hard Seltzer" beneath "Ranch Water" contributes to the expectation the Product will contain tequila because "hard" in the context of alcohol refers to distilled spirits or "hard liquor."

19. The one exception applies to the fermented apple beverage of "hard cider."

20. Various theories exist about how the term "hard" became associated with cider.

21. One contends that "hard" was implicit in the Middle English definition of cider as a "strong drink."

22. Another posits that "hard" distinguished fermented apple juice with alcohol from non-fermented and non-alcoholic fresh pressed apple juice.

23. One writer observed that "[E]ven despite the hard seltzer boom … many consumers still don't understand, or care to understand" that products sold as "hard seltzer" typically "make use of alcohol created by fermentation, rather than blending in small amounts of distilled spirits with sparkling water."[3]

24. The article stated that "spreading the concept of ranch water to the masses, [through] hard seltzer[s] with the words 'ranch water' slapped across [it]" is "inherent deception."

25. Though alcoholic beverages are required to indicate their "class," "Ranch Water" above "Hard Seltzer" fails to tell purchasers the Product they are buying not only lacks tequila but is classified as a flavored beer.

26. Second, consumers understand the bold faced statement of "Original" consistent with its dictionary definition, as the source from which a copy is made or earliest form of something.

27. In the context of an alcoholic beverage, "Ranch Water – Original" tells consumers

---

[3] Jim Vorel, Hard Seltzer and "Ranch Water" are a Perfect Combination ... for Deception, Sept. 21, 2021.

the Product's characteristics will be the same as when this drink was first sloshed into existence in ice-filled thermoses on the West Texas plains, containing tequila and lacking any sweeteners.

28. Third, Defendant "do[es] nothing to dissuade the consumer from assuming that there's actual tequila in their drink, and [] actually appear[s] to be reinforcing the deception with their choices in marketing language" by describing it as "Made With 100% Agave."

29. Paste Magazine noted that "'100% [] [A]gave' [] is [] a clever turn of phrase [because] tequila is a product of 100% agave," but that this "presumably refer[s] to the fact that the Product also contains agave nectar for sweetening."

30. The use of agave nectar for sweetening is also misleading because one of ranch water's key attributes is that it is made without such ingredients.

31. Based on the nutrition facts, this causes the Product to contain three grams of added sugar, three more grams than ranch water described as "original" is expected to have.

32. The two squiggly lines on the cans and cases are a reference to the popular but mistaken belief that high-quality tequila contains a worm.[4]

33. In fact, it was mezcal, another agave-based spirit, that contained larva of a moth that live on the agave plant.

34. Fourth, companies "take advantage of the consumer's lack of knowledge about both 'ranch water' and hard seltzer itself to sell them a drink full of fake tequila flavors."

35. The Product "can't genuinely reproduce the actual flavor profile of ranch water, because 'alcohol from sugar' [] … is just neutrally flavored booze that doesn't taste like tequila."

36. Nor does agave nectar taste like tequila, even though both are from the agave plant.

37. This result, according to Paste, is that "the entire burden of the 'tequila' part of a

[4] The Truth About The Worm In Your Tequila, Saucey, Aug. 10, 2017.

canned ranch water seltzer – the part that is supposed to be the core of the flavor profile – [falls] on the 'natural flavors' … [W]hich is to say, fake tequila flavoring."

38. RTD canned ranch water brands with tequila and without sweeteners are sold by competitor brands like Ranch Rider and are not technologically or commercially unfeasible.



### III. CONCLUSION

39. The Product contains other representations and omissions which are false and misleading.

40. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $12.99 for a six-pack of 12 oz cans, excluding tax and sales.

### Jurisdiction and Venue

41. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

42. The aggregate amount in controversy exceeds $5 million, including any statutory and

punitive damages, exclusive of interest and costs.

43. Plaintiff is a citizen of Illinois.

44. Defendant is a Connecticut corporation with a principal place of business in New York.

45. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

46. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of stores and over the internet, in the States Plaintiff seeks to represent.

47. Venue is in this District with assignment to the Manhattan Courthouse because Defendant resides in New York County and substantial part of the events or omissions giving rise to these claims occurred here, including the decisions related to the challenged representations.

## Parties

48. Plaintiff Scott Mao is a citizen of Chicago, Cook County, Illinois.

49. Defendant Diageo North America, Inc. is a Connecticut corporation with a principal place of business in New York, New York County, New York.

50. Defendant is one of the world's largest sellers of distilled spirits under dozens of the most highly-acclaimed and popular brands.

51. The Lone River brand of ranch water is indelibly associated with West Texas, the birthplace of this refreshing beverage.

52. Plaintiff purchased the Product at locations including but not necessarily limited to Jewel-Osco, at its Beer, Wine & Spirit annex, 1341 N Paulina St Chicago, Illinois 60622 in the fall of 2022, and/or among other times.

53. Plaintiff read the words, "Ranch Water," "Original," "Hard Seltzer," "Made With 100% Agave & Natural Lime Juice" and "Roots In Far West Texas."

54. Plaintiff saw the images of Texas, a "longhorn," the agave plant, the source crop for tequila, and two squiggly lines, an allusion to the "worm" associated with tequila.

55. Based on these words and images, Plaintiff expected the ingredients of ranch water, which included tequila and did not include sweeteners.

56. Plaintiff bought the Product at or exceeding the above-referenced price.

57. Plaintiff paid more for the Product than he would have had he known the representations and omissions were false and misleading, or would not have purchased it.

58. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

59. Plaintiff chose between Defendant's Product and similarly represented yet accurately labeled products which did not misrepresent their attributes, features, and/or components.

## Class Allegations

60. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Texas, North Dakota, Wyoming, Idaho, Alaska, Iowa, Mississippi, Virginia, Arkansas, North Carolina and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

61. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

62. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

63. Plaintiff is an adequate representative because his interests do not conflict with other members.

64. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

65. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

66. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

<div style="text-align:center">New York General Business Law ("GBL") §§ 349 and 350
and/or Illinois Consumer Fraud and Deceptive Business
Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*</div>

67. Plaintiff incorporates by reference all preceding paragraphs.

68. Plaintiff saw and relied on the label and expected the Product contained tequila and did not contain added sweeteners.

69. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<div style="text-align:center">Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)</div>

70. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

71. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent

and/or the consumer protection statute invoked by Plaintiff.

72. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

73. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained tequila and did not contain added sweeteners.

74. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

75. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which was alcohol from the distilled spirit of tequila, from the agave plant, and without added sweeteners.

76. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it contained tequila and did not contain added sweeteners.

77. Defendant's representations affirmed and promised that it contained some alcohol from tequila.

78. Defendant described the Product so Plaintiff believed it contained tequila and did not contain added sweeteners, which became part of the basis of the bargain that it would conform to its affirmations and promises.

10

79. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

80. This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Lone River brand of ranch water.

81. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

82. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

83. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

84. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

85. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained tequila and did not contain added sweeteners.

86. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected that it contained tequila and did not contain added sweeteners, and he relied on its skill and judgment to select or furnish such a suitable product.

<div align="center">Fraud</div>

87. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained tequila and did not contain added sweeteners.

88.     As stated in Paste Magazine, Defendant knows the Product does not contain tequila but relies on consumers confusion about ranch water, "hard" seltzer and its emphasis on agave, the source crop for tequila, to make them think otherwise.

## Unjust Enrichment

89.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;
2. Awarding monetary, statutory and/or punitive damages and interest;
3. Awarding costs and expenses, including reasonable attorney and expert fees; and
4. Other and further relief as the Court deems just and proper.

Dated:   December 23, 2022

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com